**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| IN RE STAR SCIENTIFIC, INC. | ) | Lead Case No. 1:13-cv-550-AJT-JFA |
| DERIVATIVE LITIGATION | ) | |
| | ) | |
| This Document Relates to: | ) | |
| ALL ACTIONS | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

I.  **PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS TO OVERCOME THE PRESUMPTION THAT THE FOUR NON-MANAGEMENT DIRECTORS WERE INDEPENDENT** ....................................................................10

  A.  **Plaintiff's Allegations that Alleged Improprieties Occurred on the Board's Watch Do Not Excuse Demand** ............................................................10

  B.  **Plaintiff's Additional General Allegations Do Not Excuse Demand** ...............12

  C.  **Plaintiff's Allegations Regarding Mr. Williams and Mr. Perito's Compensation Do Not Overcome the Presumption that the Nonexecutive Directors Were Independent**................................................................................14

  D.  **Plaintiffs' Remaining Allegations Regarding the Independent Directors Are Inadequate**......................................................................................................15

    1.  **The Complaint Lacks Any Additional Relevant Allegations as to Mr. Haynes or Mr. Everett** .....................................................................15

    2.  **Plaintiffs' New Allegations Regarding Mr. Chapman Do Not Show Futility** ...............................................................................................16

    3  **Plaintiffs Fail to Plead Particularized Facts Sufficient to Rebut the Presumption of Independence as to Mr. Chayet** .............................17

II.  **PLAINTIFFS FEDERAL PROXY CLAIM FAILS TO PLEAD DEMAND FUTILITY OR MEET THE REQUIREMENTS OF THE REFORM ACT** .............19

III.  **PLAINTIFFS' HAVE FAILED TO ALLEGE THAT DEMAND IS EXCUSED WITH RESPECT TO THEIR OTHER CLAIMS BASED ON ALLEGEDLY FALSE STATEMENTS TO THE MARKET** ...................................................................21

IV.  **PLAINTIFFS' REMAINING ALLEGATIONS DO NOT EXCUSE DEMAND** ......23

V.  **PLAINTIFFS ARE INADEQUATE REPRESENTATIVES OF THE COMPANY**....................................................................................................................24

VI.  **THE LAWSUIT SHOULD BE DISMISSED AS UNRIPE**..........................................26

VII.  **PLAINTIFFS FAIL TO PLEAD CONTEMPORANEOUS OWNERSHIP**.............26

Defendants respectfully submit this Memorandum of law in support of their Motion to Dismiss the Consolidated Amended Complaint.

## PRELIMINARY STATEMENT

In this purported derivative action, the shareholder-plaintiffs William Skillman and David Inloes (collectively, "Plaintiffs") seek to have nominal defendant Star Scientific, Inc. ("Star Scientific" or the "Company") pursue certain purported claims against the Company's former board of directors.  These claims are based largely on the same underlying alleged wrongful conduct that has been asserted in a consolidated putative securities class action, which is pending in the Richmond Division of this district.  Significantly, moreover, as a result of a shareholder election on or about December 27, 2013, the Company's old board was replaced by an unquestionably independent new board.

"A shareholder derivative action is an exception to the normal rule that the proper party to bring a suit on behalf of the corporation is the corporation itself, acting through its directors or a majority of its shareholders." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542 (1984).  This is because "[w]hether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors." *Id.* at 532.  Accordingly, "[a]ll States require that a shareholder make a precomplaint demand on the directors… to protect the directors' prerogative to take over the litigation or oppose it." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 102 n.7 (1991).

Controlling Delaware law recognizes a very limited "demand futility" exception to the general rule barring shareholders from pursuing corporate claims.  A shareholder may proceed with a corporate claim only when his complaint alleges particularized facts showing that the

board is "incapable of exercising its power and authority to pursue the derivative claims directly." *White v. Panic*, 783 A.2d 543, 551 (Del. 2001).

Of course, "directors' good faith exercise of oversight responsibility may not invariably prevent employees from violating criminal laws, or from causing the corporation to incur significant financial liability, or both." *South v. Baker*, 62 A.3d 1, 15 (Del. Ch. 2012) (citation and internal quotation marks omitted) (dismissing derivative action even where government reports documented significant failures by management and there was a federal securities fraud action pending). Therefore, "[a] stockholder **cannot** displace the board's authority [over the corporation's claims] simply by describing the calamity and alleging that it occurred on the directors' watch." *Id.* (citation and internal quotation marks omitted, emphasis added).

Because Plaintiffs rely almost entirely on this impermissible pleading shortcut – and fail even to adequately allege that anyone in the Company engaged in illegal activity – their claims should be dismissed for failure to make demand on the board.

There are several additional grounds for dismissal.

First, Plaintiffs' purported cause of action under Section 14(a) of the Securities and Exchange Act of 1934 manifestly fails to state a claim. Plaintiffs broadly allege that the Company's proxy statements were false, but fail even to cite any allegedly false statements, let alone allege with particularity why the statements were false and Defendants were at fault. Because the Court's subject matter jurisdiction is predicated on the Section 14(a) claim, the Court need not even address Plaintiffs' remaining state law claims.

Second, Plaintiffs are inadequate representatives within the meaning of Fed. Civ. P. 23.1. Courts have repeatedly recognized that a company's interests may be seriously undermined when a derivative action purportedly ***on behalf of*** the company is litigated at the

same time as a putative class action involving similar allegations *against* the Company.  That is clearly the case here, and Plaintiffs' disregard of the Company's strong interest in avoiding such simultaneous litigation warrants dismissal.

Third, and relatedly, because this action depends to a significant degree on the outcome of the related putative federal securities class action, it is unripe.

Fourth, Plaintiffs have failed to adequately allege facts demonstrating that they have continuously owned Company shares.

For all of these reasons, further discussed below, this action should be dismissed with prejudice.

## BACKGROUND

**Relevant individuals and entities**

Plaintiffs Skillman and Inloes allegedly are Star Scientific shareholders.  Dckt. No. 15 at ¶¶ 12, 13.[1]  Star Scientific is a technology-oriented company incorporated in Delaware that offers products with an emphasis on healthy metabolism and lifestyle.  Dckt. No. 15 at ¶¶ 14, 28.  Rock Creek Pharmaceuticals, Inc. ("Rock Creek"), a subsidiary of Star Scientific, sells nutraceutical dietary supplements, including Anatabloc® and CigRx®.  *Id.* at ¶28.

The Complaint names as defendants each of the directors who served on the Company's board of directors at the time this action was commenced.  Mr. Williams served as Star Scientific's Chief Executive Officer and as a member of the Company's former board through December 2013.  *Id.* at ¶16.  Mr. Perito served as Star Scientific's Chairman of the Board, President, and Chief Operating Officer through December 2013.  *Id.* at ¶16.

---

[1]     True and correct copies of the dockets and certain pleadings from this action and the related putative class and derivative actions referenced herein will be attached as exhibits to the Declaration of Amy J. Eldridge In Support of Motion to Dismiss Consolidated Amended Complaint (the "Declaration"), which will be filed concurrently herewith.

The remaining four directors (Messrs Haynes, Chayet, Everett, and Chapman) were nonexecutive independent directors.  Dr. Chapman was a member of the former board and is also a member of the new board and was appointed President of Star Scientific approximately 8 months after the filing of the initial complaint in this matter.  *Id.* at ¶19.  Messrs. Chapman, Chayet, and Haynes were members of the Company's Compensation Committee.  *Id.* at ¶60.  Messrs. Chapman and Haynes were also members of the Company's Audit Committee.  *Id.* at ¶59.

**The Consolidated Class Action**

On March 25, 2013, Francis J. Reuter filed a putative class action in this District seeking to represent purchasers of Star Scientific's stock against Star Scientific, Rock Creek, and Messrs. Williams and Perito, Park A. Dodd, III, and Curtis Wright.  The case was entitled *Reuter v. Star Scientific*, No. 3:13-cv-183 (the "Reuter Action").  Reuter Action Dckt. No. 1.  The complaint in the Reuter Action asserts claims for alleged: (1) violations of Section 10(b) and Rule 10b-5, and (2) violations of Section 20(a) of the Exchange Act.  *Id.*  Subsequent similar complaints were filed and then consolidated into the Reuter action (hereinafter the "Consolidated Class Action").  Reuter Action Dckt. No. 35.  On September 5, 2013, the lead plaintiff in the Consolidated Class Action filed a Consolidated Amended Complaint asserting the same legal theories.  Reuter Action Dckt. No. 39.

The plaintiff in the Consolidated Class Action asserts claims based on a "fraud on the market" theory.  *See, e.g.*, *id.* at ¶¶ 4-13.  She alleges that Star Scientific made materially false and misleading statements in press releases and SEC filings regarding clinical research on Anatabloc® involving an alleged false affiliation with Johns Hopkins University, and concealed private placements and related-party transactions.  *Id.*  According to the plaintiff, Star Scientific's stock traded at artificially inflated levels during the class period, and when the

4

purported "truth" regarding clinical research on Anatabloc® and its alleged false affiliation with Johns Hopkins University was revealed, Star Scientific's stock dropped as a result.  *Id.* at ¶¶ 13, 104.  On October 25, 2013, the defendants moved to dismiss the Consolidated Class Action.  Reuter Action Dckt Nos. 45-48.  On January 7, 2014, the Court issued several orders, including an order stating that it will not dismiss the case at this time.  Reuter Action Dckt. No. 57.

**The Consolidated Derivative Action (i.e., this Action)**

On May 2, 2013, Plaintiff Skillman filed his Complaint in this derivative action seeking to hold the individual members of Star Scientific's Board of Directors liable for the wrongdoing alleged in the Consolidated Class Action (the "Skillman Action").  Skillman Action Dckt. No. 1.  The Complaint asserts claims for: (1) Breach of Fiduciary Duty, (2) Abuse of Control, and (3) Violations of Section 14(a) of the Securities Exchange Act of 1934.  *Id.*

Skillman's claims are based largely on the same underlying purported wrongful conduct alleged in the Consolidated Class Action.  Specifically, Skillman alleges that the board acquiesced in and concealed private placements and related-party transactions dating back to 2006.  *Id.* at ¶¶ 4-5.  Skillman also alleges that Star Scientific falsely stated that Johns Hopkins University was involved in the research of Anatabloc® and its active ingredient.  *Id.* at ¶¶ 2-3, 40.  As stated above, the Consolidated Class Action is based on the same underlying alleged wrongful conduct.

On May 3, 2013, Inloes filed a derivative action against Defendants in this District, entitled *Inloes v. Williams*, No. 1:13-cv-557 AJT-JFA (the "Inloes Action").  Inloes Action Dckt. No. 1.  Inloes asserted the same claims based on the same facts as Skillman.  *Id.* On May 23, 2013, the Court consolidated the Inloes Action with the Skillman Action (the "Consolidated Derivative Action"), and approved a deferral of Defendants' obligation to answer or otherwise respond.  Dckt. No. 4.

5

On January 13, 2014, Plaintiffs filed their consolidated amended complaint, asserting the same claims based on largely the same facts as the individual complaints in the Skillman Action and in the Inloes Action (the "CAC").  Dckt. No. 15.[2]

**The Election of the New Board**

On December 27, 2013, Star Scientific's shareholders elected a new board of directors. *See* Declaration, Ex. A.  Except for Dr. Chapman, none of the members of the new board previously served as Star Scientific directors or officers or are named as defendants in this action.

**Summary of Allegations**

Although Plaintiffs had months to shore up their hastily drafted initial pleadings, the CAC is a confusing hodgepodge of conclusory allegations.

The CAC appears to allege that Defendants are liable for the alleged damage to the Company based on their approval of related-party transactions that were the subject of an investigation by the U.S. Attorney's office for the Eastern District of Virginia, for permitting disclosures "related to clinical support for its assertions about the effectiveness of Anatabloc® and its active ingredient, and the failure to exercise reasonably appropriate oversight for these alleged wrongful acts.  Dckt No. 15, ¶¶ 52-53.  The CAC conveniently fails to mention that, while a criminal case has been brought against others, none of the Defendants or anyone else at the Company has been charged.  *See* Decl. Ex. B at 15.

---

[2]     The CAC includes new allegations regarding certain transactions not mentioned in the prior pleadings.  *See, e.g.*, CAC ¶ 46 (alleging December 24, 2013 FDA warning letter). Because Plaintiff has not attempted to allege, and cannot allege, that demand on the Company's new board of directors is futile, such new allegations need not be considered.  *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006).

Plaintiffs contend that demand on the Board would have been futile, and thus was excused because the Board approved the related-party transactions and disclosures, thereby exposing themselves to a "substantial risk" of liability for breach of their duties and failed to take any action against themselves. *Id*. at ¶¶ 52-53, 61, 63.

## THE STRICT APPLICABLE STANDARDS FOR MAINTAINING A SHAREHOLDER DERIVATIVE ACTION

Plaintiffs' standing to bring the derivative action herein is determined by Delaware substantive law and Fed. R. Civ. P. 23.1.[3]

Under Delaware law a plaintiff in a derivative action ordinarily must make demand and thus afford the corporation's board of directors the opportunity to correct an alleged wrong without litigation.  Plaintiffs here concede they made no such demand.  Dckt. No. 15, ¶ 52.

Absent such a demand, a derivative plaintiff is required to plead facts, **with particularity**, that ***at least half*** of the board of directors is incapable of evaluating such a demand in a disinterested and independent manner.[4]  These particularized facts "must appear in the pleading itself; the stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case." *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973).

The demand requirement reflects the fundamental precept that the affairs of a corporation should be decided by its board of directors.  *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).

---

[3]     Rule 23.1 tests the adequacy of the pleadings in derivative actions, while substantive analysis of issues such as demand futility is still assessed under Delaware law.  *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 170 (D. Del. 2009); *Firestone v. Wiley*, 485 F. Supp. 2d 694, 701 (E.D. Va. 2007); *In re ITT Corp Deriv. Litig.*, 588 F. Supp. 2d 502, 507-08 (S.D.N.Y. 2008). *See generally Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95-96 (1991).

[4]     *See, e.g., Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 1984); *see also, Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004); Fed. R. Civ. P. 23.1((b)(3)(A-B).

Because a derivative action impinges on the directors' authority, strict demand requirements are imposed on derivative plaintiffs, *id.* at 811, and "futility is not easy to demonstrate." *In re Capital One Shareholder Derivative Litig.*, 952 F. Supp. 2d 770 (E.D. Va. 2013).

There are two tests for demand futility depending on whether a complaint challenges board action (*e.g.*, an actual board decision that is voted on) or board inaction.  In cases of board action, the plaintiff must set forth particularized factual allegations that establish a reasonable doubt that (1) the directors are not disinterested and independent, or (2) the challenged transaction was not the product of a valid exercise of business judgment.  *Aronson*, 473 A.2d at 812.  When the claim is based on board inaction, the plaintiff must set forth particularized factual allegations that establish a reason to doubt that the board could have properly exercised its independent and disinterested business judgment in responding to a demand.  *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993).  In other words, the *Rales* test involves only the first prong of *Aronson*.  *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (*Rales* governs where plaintiffs allege that board members "signed misleading statements" but do not allege "any specific board action that approved or ratified these alleged wrongdoings").  Regardless of the test, "[t]he key principle upon which this area of our jurisprudence is based is that the directors are entitled to a ***presumption*** that they were faithful to their fiduciary duties" and also are entitled to a "***presumption*** of independence."  *Beam v. Stewart*, 845 A.2d 1040, 1048, 1051 (Del. 2004) (emphasis added).  Here, Plaintiffs mostly challenge board inaction, so *Rales* primarily applies.

Demand futility analysis is a fact-specific inquiry that "proceeds director-by-director and transaction-by-transaction."  *Khanna v. McMim*, No. 20545-NC, 2006 WL 1388744, at *14 (Del. Ch. May 9, 2006).

In addition, where, as here, a corporation's articles exculpate its board members from liability except for "acts or omissions not in good faith or which involve *intentional misconduct or a knowing violation of law*," derivative plaintiffs who allege claims for breach of the fiduciary duty of care must establish through their pleadings that there is a "substantial likelihood" that the actions of the Board members fall outside the scope of the clause.[5]  *In re Baxter Int'l, Inc. Shareholders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995); 8 Del. C. 102(b)(7).  In pleading demand futility, therefore, a plaintiff must "demonstrate that the directors acted with scienter, i.e., that they had 'actual or constructive knowledge' that their conduct was legally improper." *Wood v. Baum*, 953 A.2d at 141; *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d at 171.

Finally, there are three ***additional*** requirements for demand to be excused where, as here, an amended complaint is filed ***after*** a new independent board is elected: (1) the original complaint was well pleaded as a derivative action; (2) the original complaint satisfied the legal test for demand futility; and (3) the act or transaction complained of in the amended complaint is essentially the same as that in the original pleading.  *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006).[6]

As set forth below, the CAC falls far short of adequately alleging shareholder standing.

---

[5]     Decl. Exs. C & D (Articles of Incorporation, Tenth).  The Court may take judicial notice of such corporate documents in deciding a motion to dismiss. *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d at 1270; *Miller v. U.S. Foodservice, Inc.*, 361 F. Supp. 2d 470, 475 (D. Md. 2005).

[6]     Irrespective of whether Plaintiff successfully alleges demand futility against an old board, moreover, a new and unquestionably independent board has authority to control the corporation's legal claims if it takes affirmative steps to do so.  *Braddock v. Zimmerman*, 906 A.2d 776, 785-86 (Del. 2006).

## ARGUMENT

I.   **PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS TO OVERCOME THE PRESUMPTION THAT THE FOUR NONMANAGEMENT DIRECTORS WERE INDEPENDENT**

As noted above, directors are *presumed* independent and independence is a "fact-specific determination made in the context of [each] particular case." *Beam v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004). Nonetheless, based largely on a laundry list of generalized allegations that courts have repeatedly rejected, Plaintiffs broadly attempt to allege that the directors lacked independence with respect to any of the transactions at issue. To the contrary, Plaintiffs have failed to adequately plead that any of the four nonmanagement directors who constitute a majority of the board (Messrs. Everett, Chayet, Chapman, and Haynes) lacked independence for any relevant purpose.

### A.   Plaintiff's Allegations That Alleged Improprieties Occurred on the Board's Watch Do Not Excuse Demand

Much of the CAC is predicated on the theory that the former directors served on the board during the time that illegal or improper activities or transactions occurred or were approved and/or may have served on board audit or compensation committees. *See, e.g.*, CAC ¶¶ 58-60, 62.

Of course, there has been no adjudication of wrongdoing by *anyone* at the Company; none of the nonexecutive directors are even named defendants in the federal securities class action and, as detailed below, Plaintiffs have failed to plead any illegal conduct with the requisite particularity.

Even setting all of that aside, numerous courts applying Delaware law have dismissed far stronger exemplars of Plaintiffs' meritless theory that demand is excused when wrongdoing occurs on a board's watch. *See, e.g., Stone v. Ritter*, 911 A.2d 362, 372-73 (Del. 2006) (rejecting

10

allegation that demand was excused where corporation paid $40 million in fines pursuant to a

deferred prosecution agreement and $10 million in civil penalties to resolve government

investigations relating to violations of the federal Bank Secrecy Act and various anti-money

laundering regulations, *id.* at 365-66, and where a regulatory report concluded that corporation

"lacked adequate board and management oversight," *id.* at 366); *In re ITT Corp. Derivative*

*Litig.*, 653 F. Supp. 2d 453 (S.D.N.Y. 2009) (demand was not excused even though company had

pleaded guilty to federal felony charges in connection with conduct alleged in complaint and

agreed to pay over $100 million in criminal fines, penalties, and forfeitures).[7]

    As these cases illustrate, courts applying Delaware law "routinely reject the conclusory

allegation that because illegal behavior occurred, internal controls must have been deficient, and

the board must have known so." *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007).

    Further, the Delaware Supreme Court has made clear that "board approval of a

transaction, even one that later proves to be improper, without more, is an insufficient basis to

infer culpable knowledge or bad faith on the part of individual directors." *Wood v. Baum*, 953

A.2d 136, 142 (Del. 2008). Accordingly, although a shareholder derivative complaint "allege[d]

many violations of federal securities and tax laws," it was properly dismissed because it did "not

plead with particularity the specific conduct in which each defendant 'knowingly' engaged or

that defendants knew that such conduct was illegal." *Id.* At 142. *See also Brehm*, 746 A.2d at

257 n.34; *Grimes v. Donald*, 673 A.2d 1207, 1216 n.8 (Del. 1996); *Aronson*, 473 A.2d at 817.

---

[7]    *See also In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009)
(dismissing shareholder derivative action for failure to plead "what the Directors actually knew
about the 'red flags'" regarding investigations into the company's alleged anticompetitive
business practices and "how they responded to them"); *In re CNET Networks, Inc.*, 483 F. Supp.
2d 947 (N.D. Cal. 2007) (demand not excused despite allegations of board approval of illegally
backdated options); *In re Extreme Network*s, *Inc. Shareholder Derivative Litig.*, 573 F. Supp. 2d
1228 (N.D. Cal. 2008) (similar); *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995).

Plaintiffs' related allegations that demand is excused because some directors may have served on the Company's compensation or audit committees are "contrary to well-settled law." *Wood*, 953 A.2d at 142. "[N]umerous Delaware decisions make clear" that "an allegation that the underlying cause of a corporate trauma falls within the delegated authority of a board committee does not support an inference that the directors on that committee knew of and consciously disregarded the problem." *South v. Baker*, 62 A.3d 1, 17 (Del. Ch. 2012); *In re ITT Corp. Deriv. Litig.*, 588 F. Supp. 2d 502, 514 (S.D.N.Y. 2008) ("neither an awareness of facts nor a conscious disregard of oversight duties can be inferred solely from a director's service on a committee").

## B.    Plaintiffs' Additional General Allegations Do Not Excuse Demand

Plaintiffs also rely heavily on a number of other inadequate boilerplate allegations that fall far short of pleading futility with the requisite particularity. Specifically, Plaintiffs allege that:

- To properly prosecute this lawsuit, all Defendants would have to "sue themselves and the other defendants." CAC ¶ 63.

Allegations that directors would have to sue themselves "raise[] no legally cognizable issue under Delaware corporate law." *Aronson v. Lewis*, 473 A.2d 805, 818 (Del. 1984).

- The former directors did not bring suit after the Company's claims accrued. CAC ¶¶ 61, 63.

This allegation also carries no weight under Delaware law. *See Richardson v. Graves*, C.A. No. 6617, 1983 WL 21109 at *3 (Del. Ch. June 17, 1983) (rejecting plaintiffs' theory that if the board was "inclined to sue [it] would have done so before now" as "hav[ing] no basis in fact and in law")[8].

---

[8]     *See also Blasband v. Rales*, 971 F.2d 1034, 1052 (3d Cir. 1992) ("a board's failure to take action, even if it is aware of wrongdoing, does not demonstrate futility"); *Hartsel v. The*

● The directors were compensated for their services. *See, e.g.,* CAC ¶¶ 18-21, 64.

"Receipt of director's fees does not suggest a conflict of interest. If it did, every director who receives a director's fee would be biased. Such a rule would eviscerate the rationale for ever making a demand and would strip Rule 23.1 [and Delaware's demand requirement] of all meaning. *Strugala v. Riggio*, 817 F. Supp. 2d 378, 387 (S.D.N.Y. 2011) (citation omitted). Thus, "[i]t is well established that allegations that defendants 'are paid for their services as directors' do not excuse demand.'" *In re Am. Int'l Grp. Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 432 (collecting Delaware cases).

● The applicable directors and officers insurance policy includes an "insured vs. insured" exclusion. CAC ¶ 66.

"[T]his argument has been rejected repeatedly under Delaware law." *La. Mun. Police Empl. Ret. Sys. v. Pandit*, No. 08 Civ. 7389 (LTS)(RLE), 2009 WL 2902587, at *9 (S.D.N.Y. Sept. 10, 2009); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Lundgren*, 579 F.Supp.2d 520, 537 (S.D.N.Y. 2008) (collecting cases).

● The board members on the compensation committee awarded "excessive" compensation to Mr. Williams and Mr. Perito, which shows that they were "dominated" by Mr. Williams. CAC ¶¶ 55-56, 60.

As detailed below, the board's compensation decisions are not a basis to excuse demand, and no other particularized facts are alleged in support of Plaintiffs' demand allegations. In such situations "the shorthand shibboleth of dominated and controlled directors is insufficient."

---

*Vanguard Group*, 2011 WL 2421003 (Del. Ch. June 15, 2011), *aff'd* 2012 WL 171991 (Del. Jan. 19, 2012). Similarly unavailing is the allegation directed only against Mr. Perito regarding a press statement in which he characterized the securities litigation ***against*** the Company as meritless. CAC ¶ 56. A corporate officer's statement commenting adversely on his beliefs regarding the merits of a suit against the Company hardly suggests disloyalty to the Company. Moreover, courts have recognized that similar statements directed specifically at derivative suits purportedly brought on behalf of the Company also fail to excuse demand. *See, e.g., In re Bear Stearns Cos., Inc., Sec., Deriv. & ERISA Litig.*, 763 F. Supp. 2d 423, 542 (S.D.N.Y. 2011); *Morrone v. Erlich*, 09 Civ. 1910 (RJD) (VVP), 2011 WL 1322085, at *8 (E.D.N.Y. Mar. 31, 2011).

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*, 534 F.3d 779, 794 (D.C. Cir.

2008) (internal punctuation and citation omitted).  *See also, e.g.*, *Talley v. Mann*, No. CV 11-

05003 GAF, 2012 WL 946990, at * 8 (C.D. Cal. Feb. 14, 2012).

> **C.**    **Plaintiffs' Allegations Regarding Mr. Williams and Mr. Perito's Compensation Do Not Overcome the Presumption That the Nonexecutive Directors Were Independent**

Also inadequate are Plaintiffs' allegations regarding Mr. Williams' and Mr. Perito's

compensation.

"[D]irectors have the power, authority and wide discretion to make decisions on

executive compensation," which will not be disturbed unless the package is "so

disproportionately large as to be unconscionable and constitute waste."  *Brehm v. Eisner*, 746

A.2d 244, 262 (Del. 2000) (internal citations omitted).

Not surprisingly, therefore, demand futility arguments based on allegations of excessive

or improper compensation have fared poorly in the courts.  Successful futility averments based

on executive compensation "are confined to unconscionable cases where directors irrationally

squander or give away corporate assets."  *Oakland County Employees' Retirement Sys. v.*

*Massaro*, 736 F. Supp. 2d 1181, 1188 (N.D. Ill. 2010) (quoting *In re Walt Disney Co. Deriv.*

*Litig.*, 906 A.2d 27, 74 (Del. 2006)).  The vast majority of executive compensation derivative

suits are dismissed on the pleadings, including cases involving compensation far more lucrative

than what was paid here.[9]  In *Pirelli*, the District of Columbia Circuit rejected a challenge to

---

[9]      *See, e.g.*, *In re American Int'l Group, Inc. Deriv. Litig.*, 700 F. Supp. 2d at 445-46
(dismissing derivative claim based on payment of $40 million in bonuses to AIG's CEO and
"lavish" retention payments to management); *Massaro*, 736 F. Supp. 2d at 1187-88 (rejecting
executive compensation claim despite allegation that compensation was based on artificially
inflated financial results); *Sherman v. Ryan*, 911 N.E.2d 378, 398 (Ill. App. 1 Dist. May 20,
2009) (rejecting executive compensation claim because plaintiffs failed to establish that "the
challenged transaction served no corporate purpose" or that "the corporation received no
consideration at all"); *Kernaghan v. Franklin*, No. 06 Civ. 1533, 2008 WL 4450268, at *10

Fannie Mae's award of *$31 million* in severance benefits to two executives despite allegations of serious accounting improprieties during their tenure at the company.  *Pirelli v. Raines*, 534 F.3d at 790-92.  In *Brehm*, the Delaware Supreme Court rejected demand futility allegations based on a *$140 million* severance package paid to a Disney CEO who served for less than 18 months. *Brehm*, 746 A.2d at 252-53, 263-64.  In *Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn*, a district court rejected a challenge to a *$40 million* termination package, holding that "absent allegations of fraud, the deference to directors' business judgment is particularly broad in matters of executive compensation." No. C-06-01711 RMW, 2008 WL 878424, at *2, 13-16 (N.D. Cal. Mar. 28, 2008).

Against this backdrop, Plaintiffs' conclusory allegations regarding Mr. Williams' and Mr. Perito's compensation fall well short of alleging demand futility.

### D.    Plaintiffs' Remaining Allegations Regarding the Independent Directors Are Inadequate

Plaintiffs offer a few meager additional allegations regarding some of the nonexecutive directors.  None suggests that demand should be excused.

#### 1.    The Complaint Lacks Any Additional Relevant Allegations as to Mr. Haynes or Mr. Everett

Apart from their boilerplate general allegations discussed above, Plaintiffs offer no specific averments regarding the independence of Mr. Haynes or Mr. Everett.

---

(S.D.N.Y. Sept. 29, 2008) ("mere size" of executive compensation package insufficient to demonstrate demand futility); *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1077-78 (C.D. Cal. 2008) (rejecting demand futility argument based on compensation package for Countrywide CEO; "While Mozilo's compensation may appear excessive," courts are "ill-fitted" to second-guess compensation decisions); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*, 534 F.3d 779, 791-92 (D.C. Cir. 2008) (affirming dismissal of futility allegation based on director approval of severance packages); *In re Walt Disney Co.*, 906 A.2d 27, 74 (Del. 2006); *Brehm v. Eisner*, 746 A.2d 244, 263-64 (Del. 2000) (rejecting demand futility allegations despite award of much larger severence).

Indeed, Mr. Everett was named to the Board in December 2012, after nearly all of the supposed wrongdoing occurred.  CAC ¶ 21.  Plaintiffs' inclusion of Mr. Everett as a defendant in this case is inexplicable.

### 2.   Plaintiffs' New Allegations Regarding Mr. Chapman Do Not Show Futility

The original complaints in this matter similarly offered no additional pertinent allegations regarding Dr. Chapman.  In the CAC, however, Plaintiffs allege that, months after their lawsuits were filed, Dr. Chapman was "appointed President of Star Scientific" and, as a result of his new position, will be the "beneficiary of a munificent employment agreement and compensation package."  CAC ¶ 19.

Plaintiffs' new allegation is legally and factually beside the point.  The futility of making a demand "must be gauged at the time the derivative action is commenced not afterward with the benefit of hindsight."  *Stepak v. Dean*, 434 A.2d 388, 390 (Del. Ch. 1981) (citation and internal quotation marks omitted).[10]  That Dr. Chapman may have become a member of management at the end of 2013 does not suggest that he lacked independence when Plaintiffs commenced these actions six months earlier in May 2013.

Even if Mr. Chapman's current status as a member of management were somehow pertinent, Plaintiffs' failure to raise it earlier precludes consideration of this allegation:  Where, as here, a complaint has been "amended after a new board of directors is in place," a plaintiff may avoid making a demand on the new board only when, among other things, "the original complaint satisfied the legal test for demand excusal."  *Braddock v. Zimmerman*, 906 A.2d 776,

---

[10]     See also *Hartsel v. The Vanguard Group*, No. 5394-VCP, 2011 WL 2421003, at *27 (Del. Ch. June 15, 2011), *aff'd* 2012 WL 171991 (Del. Jan. 19, 2012) ("'[F]utility is gauged by the circumstances existing at the commencement of a derivative suit' and not afterwards with the benefit of hindsight"); *Gomes v. Am. Century Cos., Inc.*, 710 F.3d 811, 817 (8th Cir. 2013) (rejecting plaintiff's argument that the court should "consider post-filing events when determining whether demand was excused").

786 (Del. 2005). Because the initial complaints failed to allege facts suggesting that Dr.

Chapman lacked independence, Plaintiffs do not satisfy this requirement.

### 3. Plaintiffs Fail to Plead Particularized Facts Sufficient to Rebut the Presumption of Independence as to Mr. Chayet

Plaintiffs offer two inadequate additional allegations regarding Mr. Chayet.

Plaintiffs first allege that Mr. Chayet lacks independence based on the consulting contract

he had with the Company's subsidiary, Rock Creek, from March 2010 through March 2011,

which paid him $6,000 per month plus expenses.[11] CAC ¶ 57. But receipt of a consulting fee

alone does not impact a director's independence. *In re Adolor Corp. Deriv. Litig.*, No. 04-3649,

2009 WL 1325738, at * 10 (E.D. Pa. May 12, 2009). Plaintiffs are required to plead details

sufficient to indicate "how or why" the consulting fees were material. *Id.* Here, Plaintiffs have

failed to do so, and courts have found that similar and far greater dollar figures did not create

disabling interests. *See, e.g., In re Sagent Tech, Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079, 1088-

89 (N.D. Cal. 2003) (independent director's consulting contract of $5,000/month plus additional

$50,000 lump sum did not raise a reasonable doubt as to his independence); *In re Walt Disney*

*Co. Deriv. Litig.*, 731 A.2d 342, 360 (Del. Ch. 1998) (rejecting conflict from fees to director's

law firm because "[p]laintiffs have not alleged that the $50,000 in consulting fees was even

material [to the director]"); *In re The Limited, Inc. S'holders Litig.*, No. Civ. A. 17148-NC, 2002

WL 537692, at *5 (Del. Ch. Mar. 27, 2002) (director, who was a principal in a music company

that received $400,000 in compensation from the defendant company, was still independent

because there were no allegations that the figure was material to the company or the director).[12]

---

[11]     Mr. Chayet's consulting agreement was assessed by the Audit Committee as a related-party transaction because he is an independent director. The Audit committee approved the agreement pursuant to its related party transaction policy on March 15, 2010. CAC ¶ 30.

[12]     Further, any challenge to a director's disinterestedness must be analyzed within the context of the challenged transaction. *Beam*, 845 A.2 at 1049. Thus, even assuming contrary to

Plaintiffs also assert that, as a consultant, Mr. Chayet was to identify and recommend for appointment to Star Scientific's board of scientific advisors individuals who could "aid in communicating to the public health community and others" information about Star Scientific's products.  Dckt No. 15, ¶ 57.  The CAC then concludes that, in this capacity, Mr. Chayet "was responsible for the precise subject matter that would have included disclosures related to Johns Hopkins' purported role in clinical trials of Anatabloc®" and, therefore, was "directly involved in much of the wrongful conduct complained of herein."  CAC ¶ 57.

Yet Plaintiffs fail to provide any factual basis for their conclusion that Mr. Chayet "was responsible for the precise subject matter that would have included disclosures related to Johns Hopkins' purported role in clinical trials of Anatabloc®."  *Id.*  Indeed, Plaintiffs allege no facts that even suggest that the identification of potential scientific advisors was in any way related to the development of disclosures regarding testing of Anatabloc®.  As with Plaintiffs' defective allegations regarding board committee service, such averments fail to provide "factual details" that are "crucial" such as how (if at all) Mr. Chayet "was actually involved in creating or approving the [challenged] statements."  *In re Citigroup, Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 133 n.88 (Del. Ch. 2009).

Accordingly, Plaintiffs have failed to allege particularized facts to rebut the presumption that the nonexecutive directors were independent for all relevant purposes.

---

law that Mr. Chayet's consulting agreement rendered him not independent and disinterested for the subjects actually related to his consulting role, it would be limited in time to disclosures made from March 2010 through March 2011.  Mr. Chayet's independence for all other purposes and times would remain intact.

## II.   PLAINTIFFS FEDERAL PROXY CLAIM FAILS TO PLEAD DEMAND FUTILITY OR MEET THE REQUIREMENTS OF THE REFORM ACT

Plaintiffs' federal proxy claims asserted under Section 14(a) of the Securities Exchange Act (CAC ¶¶ 29-31) are insufficiently pled and make no sense.

Shareholder derivative claims under Section 14(a) are subject ***both*** to the Delaware demand requirement and Fed. R. Civ. P. 23.1 ***and*** to the pleading requirements of the Private Securities Litigation Reform Act of 1995 (the "Reform Act"). *See, e.g., Burt v. Maasberg*, No. ELH-12-0464, 2013 WL 1314160, at *28 (D. Md. Mar. 31, 2013) (Reform Act applies); *Bader v. Blankfein*, 356 Fed App'x 471, 473 (2d Cir. 2009) (demand requirement applies); *Warhanek v. Bidzos*, No. 12-263-RGA-SRF, 2013 WL 5273112 (D. Del. Sept. 18, 2013) (demand not excused where plaintiff raised claims under Section 14(a), but failed to make demand or allege that demand was futile).

Here, Plaintiffs allege that the Company's proxy statements filed on November 14, 2012, and November 18, 2013, "and possibly all previous proxy statements since 2006," violated Rule 14-9 and Section 14(a) of the Securities Exchange Act of 1934.  CAC ¶ 78.  According to Plaintiffs, the proxy statements "failed to disclose (among other things) that the Company's controls over accounting and financial disclosure were deficient and contained financial statements that were false and misleading."  CAC ¶ 79.

Plaintiffs, however, fail to plead any facts, *particularized or otherwise*, to support their Section 14(a) and Rule 14a-9 allegations.  Indeed, Plaintiffs do not even quote or summarize the content of the November 14, 2012, and November 18, 2013, proxy statements, which are simply mentioned once in passing in Paragraph 78 of the CAC.  *Id.* at ¶ 78.  The only other proxy statements referenced in the CAC are the November 4, 2009, the November 9, 2010, and the November 8, 2011, proxy statements, which simply disclosed the related-party transactions and

19

Mr. Chayet's Rock Creek consulting agreement discussed above.  CAC ¶¶ 29-31.  Plaintiffs do

not allege any facts about these proxy statements that would even remotely support their claim

that the proxy statements were somehow false or misleading.  This requires dismissal of

plaintiffs' proxy claims.  *See Burt v. Massberg*, 2013 WL 1314160, at *28 (D. Md. Mar. 31,

2013) (material falsity is one of the required elements of a proxy claim); 15 U.S.C. § 78u-4(b)(1)

(complaint must "specify" among other things "each statement alleged to have been misleading,

the reason or reasons why the statement is misleading"); *Vitellone v. Evans*, No. H-13-1887,

2013 WL 6806179, at *9 (S.D. Tex. Dec. 20, 2013) (rejecting similar conclusory allegations).

Further, as to each alleged proxy misstatement, plaintiffs are required to allege with

particularity facts creating a strong inference that each defendant acted with at least negligence.

*Burt v. Massberg*, 2013 WL 1314160, at *28 (D. Md. Mar. 31, 2013); 15 U.S.C. § 78u-4(b)(1).

Plaintiffs have not even attempted to meet this requirement.

Plaintiffs also have failed to plead particularized facts sufficient to excuse demand as to

the proxy claims.  *See, e.g., Abrams v. Wainscott*, No. 11-00297-RGA, 2013 WL 6021953 at *2-

3 (D. Del. Nov. 13, 2013) (rejecting plaintiff's argument that the members of the board were

interested because of the board members' interest in their stock option compensation and,

therefore, could not consider demand regarding compensation proposals in proxy statements).

Because the federal proxy claims are Plaintiffs' only pleaded basis for federal subject

matter jurisdiction, *see* CAC ¶ 10, it is proper for the Court to end its analysis here and dismiss

the action without addressing the remaining state law claims.  *See, e.g., Hunt v. Branch Banking

& Trust Co.,* 480 Fed. App'x. 730, 732 (4th Cir. 2012) (ordinarily, when federal claims are

dismissed before trial, state claims should be dismissed as well).

III.   **PLAINTIFFS' HAVE FAILED TO ALLEGE THAT DEMAND IS EXCUSED WITH RESPECT TO THEIR OTHER CLAIMS BASED ON ALLEGEDLY FALSE STATEMENTS TO THE MARKET**

Most of the CAC's "substantive" allegations are simply lifted from the federal class action.  They assert that the Company disseminated inaccurate or misleading information regarding the Company's "relationship with Johns Hopkins."  CAC ¶ 52.  See also CAC ¶¶ 32-39.  The Company's directors are said to be liable in this action for "permitting" the Company to disseminate such information and, in one instance, for "sign[ing]" a misleading statement.  Plaintiffs further assert that there was a "lack of controls over disclosure."  CAC ¶ 52.

To state a duty-of-disclosure claim where, as here, no request for shareholder action is alleged, plaintiffs must allege that directors "deliberately misinformed shareholders." *Citigroup*, 964 A.2d at 132.  Especially with respect to the nonexecutive directors, Plaintiffs fail to do so, much less with particularity "specific to each director." *Desimone*, 924 A.2d at 943.[13]

First, "the Complaint does not sufficiently allege that the director defendants had knowledge that any disclosures or omissions were false or misleading or that the director defendants acted in bad faith in not adequately informing themselves." *Citigroup*, 964 A.2d at 134; *see also id.* (plaintiffs have "not alleged particular facts showing that the director defendants were even aware of any misstatements or omissions").  "The Board's execution of … financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality. *Wood*, 954 A.2d at 142; *see also In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 621 (6th Cir. 2008) (demand not excused by an allegation that directors "signed and approved [the company's] annual reports" because this "does not mean that

---

[13]     That a statement concerns a Company's principal product, CAC ¶ 52, does not relieve plaintiff of his obligation to plead particularized facts with respect to each director.  *See, e.g., ITT Corp. Derivative Litig.*, 653 F. Supp. 2d. 453, 463 (S.D.N.Y. 2009); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Lundgren*, 579 F. Supp. 2d 520, 535 (S.D.N.Y. 2008).

they had actual knowledge of the accounting errors contained within the reports"); *Rahbari v. Oros*, 732 F. Supp. 2d 367, 380 (S.D.N.Y. 2010) (applying Delaware law, the court held demand was not excused because the "signing of financial reports is insufficient to create an inference that the directors had actual or constructive notice of any illegality").  Plaintiffs here, indeed, allege only that the Company's directors "intentionally, recklessly, or negligently" breached their fiduciary duties.  CAC ¶ 69.  An alternative pleading of negligence is insufficient to establish a claim requiring knowledge.

Second, "the Complaint does not contain specific factual allegations that reasonably suggest sufficient board involvement in the preparation of the disclosures."  *Citigroup*, 964 A.2d at 134.  "Pleading that the director defendants 'caused' or 'caused or allowed' the Company to issue certain statements not sufficiently particularized pleading to excuse demand," because "[i]t is unclear from such allegations how the board was actually involved in creating or approving the statements."  *Id.* at 133 n.88.  These "factual details .. are crucial to determining whether demand on the board of directors would have been excused as futile."  *Id.*  Here, as in *Citigroup*, Plaintiffs do not allege facts suggesting that the director defendants – and especially the nonexecutive director defendants – "prepared… or … were directly responsible for the misstatement or omissions."  *Id.* At 134.

Plaintiffs fare no better by recasting their claims as premised on a failure of oversight. A failure of oversight claim - commonly referred to as a "Caremark Claim" – "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006); *Desimone*, 924 A.2d at 939 (same).  There can be no liability for a failure of oversight unless "(a) the directors utterly failed to implement any reporting or

information system or controls, or (b) having implemented such a system or controls, consciously failed to monitor or oversee [the corporation's] operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). Plaintiffs' allegations that the failure of internal controls led to supposed deficiencies with the Company's disclosures fall far short of the particularized pleadings necessary to support a *Caremark* claim.[14]

## IV.    Plaintiffs' Remaining Allegations Do Not Excuse Demand

Plaintiffs' remaining allegations require little discussion.

Plaintiffs allege that the Board breached its "duty of candor" by waiting until the Company filed its 10-K for fiscal year 2012, on March 18, 2013, to disclose the January and February receipt of subpoenas from the U.S. Attorney's Office for the Eastern District of Virginia. CAC ¶ 52. But the federal securities laws do not impose "a system of continuous disclosure." *Gallagher v. Abbott Laboratories*, 269 F.3d 806, 808 (7th Cir. 2001); s*ee also*, *Schatz v. Rosenberg*, 943 F.2d 485, 490 (4th Cir. 1991). Moreover, corporate managers "are entitled to investigate for a reasonable time, until they have a full story to reveal." *In re Agnico-Eagle Mines Ltd. Sec. Litig.*, 11 Civ. 7968 (JPO), 2013 WL 144041, at *21 (S.D.N.Y. Jan. 14, 2013), *quoting Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 761 (7th Cir. 2007).

---

[14]     *See, e.g., In re Sonus Networks, Inc. S'holder Deriv.*, 499 F.3d 47, 70-71 (1st Cir. 2007) ("The fact that failures of internal controls led to the restatement of financials with worse results than originally reported is not enough under Delaware law to establish demand futility") (collecting cases); *Ritter*, 911 A.2d at 371 (affirming dismissal of "oversight" claim despite the imposition of a $50 million fine for criminal violations that indisputably resulted from "the lack of internal controls . . . ."); *Rattner* v. *Bidzos*, 2003 WL 22284323, at *12-13 (Del. Ch. Sept. 30, 2003) (dismissing oversight claim despite alleged accounting violations and significant insider stock sales); *Guttman* v. *Huang*, 823 A.2d 492, 494-97, 505-06 (Del. Ch. 2003) (dismissing oversight claim despite alleged accounting violations over several years and substantial insider stock sales). *See also* Section I.A. of the Argument above.

Accordingly, Plaintiffs have failed to allege any duty to disclose receipt of any subpoenas sooner than the Company did.

Plaintiffs also allege that the board "approved a number of related party transactions involving Company stock dating back to 2006" that were the focus of the subpoena.  CAC ¶ 52. But a bald allegation that transactions were the subject of a subpoena hardly suffices to plead illegal conduct – particularly where, as here, the Company disclosed in its report on SEC Form 10-Q that it does not believe there will be charges stemming from the investigation by the U.S. Attorney's Office.  Decl., Ex. B (10-Q for period ending June 30, 2013, at 15; filed Aug. 9, 2013).

Further, as with all of their allegations, Plaintiffs have pleaded no facts demonstrating "that the directors acted with scienter, i.e., that they had actual or constructive knowledge that their conduct was legally improper."  *Wood*, 953 A.2d at 141.

## V.     PLAINTIFFS ARE INADEQUATE REPRESENTATIVES OF THE COMPANY

Under Fed. R. Civ. P. 23.1, a derivative action cannot "be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."  A plaintiff in a derivative action owes a corporation undivided loyalty, must not have ulterior motives, and may not pursue a personal agenda.  *See Smith v. Ayers*, 977 F.2d 946, 949 (5th Cir. 1992); *ShoreGood Water Co., Inc. v. U.S. Bottling Co.*, No. CIV.A. RDB08-2470, 2009 WL 2461689, at *6 (D. Md. Aug. 10, 2009).

Plaintiffs fail to satisfy this requirement.

Courts have repeatedly recognized that the simultaneous prosecution of a derivative action and securities class action is premature and inappropriate because the derivative action

24

ordinarily will prejudice the corporation's position in the securities class action.[15]  For example, in this action, Plaintiffs presumably will attempt to undermine the credibility of Star Scientific's former officers and directors, whereas, the Company may need to rely on the credibility of those same witnesses to defend against the claims in the securities class action.  *See, e.g., In re Groupon*, 882 F. Supp. 2d at 1052-53; *Cucci v. Edwards*, No. SACV 07-532 PSG (MLGx), 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007); *Breault v. Folino*, No. SACV010826GLTANX, 2002 WL 31974381, at *2 (C.D. Cal. March 15, 2002); *In re Ormat*, 2011 WL 3841089, at*4; *In re First Solar*, 2012 WL 6570914, at *2.  Moreover, the simultaneous prosecution of the two actions necessarily diverts the Company's resources away from defending itself in the securities class action.  *See, e.g., Breault*, 2002 WL 31974381 at *2; *Cucci*, 2007 WL 3396234, at *2; *In re Ormat*, 2011 WL 3841089, at *4.

Notwithstanding the Company's obvious interest in avoiding simultaneous derivative and class litigation, Plaintiffs filed this case long before it was appropriate – or even ripe.  Plaintiffs then continued to disregard the Company's interests by refusing to cooperate with Defendants in seeking a further stay without seeking to extract unjustified concessions.  *See, e.g.,* Dckt. No. 17 ¶ 1.a.  This plainly demonstrates Plaintiffs' inadequacy.  *See South v. Baker*, 62 A.3d 1, 25 (Del. Ch. 2012) ("[P]ursuing a *Caremark* claim during the pendency of the underlying litigation or governmental investigation may well compromise the corporation's position on the merits, thereby causing or exacerbating precisely the harm that the Caremark plaintiff ostensibly seeks

---

[15]      *See, e.g., In re First Solar Derivative Litigation*, No. CV-12-00769-PHX-DGC, 2012 WL 6570914, at *2 (D. Az. Dec. 17, 2012); *In re Groupon Derivative Litigation*, 882 F. Supp. 2d 1043, 1052-53 (N.D. Ill. 2012); *In re Ormat Technologies, Inc.*, No. 3:10-CV-00177-ECR-RAM, 2011 WL 3841089, at*4 (D. Nevada Aug. 29, 2011); *Cucci v. Edwards*, No. SACV 07-532 PSG (MLGx), 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007); *Breault v. Folino*, No. SACV010826GLTANX, 2002 WL 31974381, at *2 (C.D. Cal. March 15, 2002); *see also Brenner v. Albrecht*, C.A. No. 6514-VCP, 2012 WL 252286, at *5 (Del. Ch. Jan. 27, 2012).

to remedy."); *Baca v. Insight Enterprises, Inc.*, C.A. No. 5105-VCL, 2010 WL 2219715, at *5 (Del. Ch. June 3, 2010) (questioning whether a " stockholder with a nominal stake" who, among other things, "files an indemnification-based derivative action prior to a ruling on a motion to dismiss in the underlying federal securities action" is "adequately representing the interests of the corporation, as opposed to facilitating the pursuit of economic self-interest" by his law firm).

## VI.    THE LAWSUIT SHOULD BE DISMISSED AS UNRIPE

For substantially the same reasons, the case should be dismissed as unripe.

*See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, MDL No. 12–2389. No. 13 Civ. 2830, 2013 WL 6798160, *22 (S.D.N.Y. Dec. 22, 2013).

## VII.   PLAINTIFFS FAIL TO PLEAD CONTEMPORANEOUS OWNERSHIP

Plaintiffs also have failed to allege with adequate particularity that they have continuously owned Star Scientific stock from the date of the alleged wrongdoing beginning in 2006 through the time of the filing of the lawsuit.  The bald allegation in both the original and amended complaints that each plaintiff "is, and was at all times relevant hereto, an owner and holder of Star Scientific common stock," Skillman Compl. ¶ 11; Inloes Compl. ¶ 11; CAC ¶¶ 12, 13, and the similarly general assertion in the attached verifications that "I am a shareholder of Star Scientific, Inc. and have continuously so owned Star Scientific, Inc. common stock during the relevant period" are insufficient.  The CAC should be dismissed on this basis as well.  *See Capital One Shareholder Derivative Litig.*, 952 F. Supp. 2d 770 (E.D. Va. 2013); *In re American Apparel, Inc. Shareholder Derivative Litig.*, 2012 WL 9506072, at *36-*38 (C.D. Cal. July 31, 2012).

## CONCLUSION

The CAC should be dismissed with prejudice.

February 3, 2014                              Respectfully submitted:


By: _____/s/_____

John Prominski, Jr. (VSB # 19294)
MILES & STOCKBRIDGE, P.C.
1751 Pinnacle Dr., Suite 500
Tysons Corner, VA 22102
Tel:    (703) 903-9000
Fax:    (703) 610-8686
E-mail: jprominski@milesstockbridge.com
*Liaison Counsel for Defendants*

Charles Lee Eisen (admitted *pro hac vice*)
Nicolas G. Terris (admitted *pro hac vice*)
Amy J. Eldridge (VSB# 77873)
K&L Gates LLP
1601 K Street NW
Washington, D.C. 20006
Tel:    (202) 778-9000
Fax:    (202) 778-9100
E-mail: charles.eisen@klgates.com
E-mail: nicolas.terris@klgates.com
E-mail: amy.eldridge@klgates.com

Joanna A. Diakos (admitted *pro hac vice*)
K&L Gates LLP
599 Lexington Ave.
New York, NY 10022
Tel: (212) 536-3900
Fax: (212) 536-4807
E-mail: joanna.diakos@klgates.com

*Attorneys for Defendants*