# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| IN RE STAR SCIENTIFIC, INC. | : | |
| DERIVATIVE LITIGATION | : | Lead Case No.  1:13-CV-550-AJT-JFA |
| | : | |
| This Document Relates to: | : | |
| ALL ACTIONS | : | |
| | : | |

## NOMINAL DEFENDANT'S BRIEF IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................ 3

ARGUMENT ............................................................................................................................. 4

      A.     THE LEGAL STANDARD ...................................................................... 4

      B.     THE COMPANY'S FINANCIAL CONSTRAINTS MANDATE
           A LOWER FEE ...................................................................................... 5

      C.     THE MARKET CAPITALIZATION OF STAR SCIENTIFIC
           MANDATES A LOWER FEE AWARD ................................................. 7

      D.     PLAINTIFF COUNSEL'S CORPORATE GOVERNANCE
           REFORMS ARE MODEST ...................................................................... 9

      E.     PLAINTIFF'S COUNSEL'S  TIME AND EFFORT DO NOT
           JUSTIFY THEIR EXCESSIVE FEE REQUEST ................................... 12

      F.     THE LITIGATION WAS ORDINARY AND ROUTINE FOR
           EXPERIENCED AND QUALIFIED PLAINTIFF'S COUNSEL ...................... 14

CONCLUSION ....................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Aaron v. Parsons*, 144 A.2d 155 (Del. 1958) ................................................................ 5

*Affymetrix Deriv. Litig.*, No. C 06-5353-JW (N.D. Cal. 2008) ...................................... 8

*In re Am. Capital S'holder Deriv. Litig.*, 2013 WL 3322294 (D. Md. June 28, 2013) .................. 8

*In re Am. Real Estate P'rs, L.P. Litig.*, 1997 WL 770718 (Del. Ch.) ............................... 5

*Ams. Min. Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012) ......................................... 9, 13

*Arcambel v. Wiseman*, 3 U.S. 306 (1796) ....................................................... 4

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ..................................................... 4

*Bristol-Myers-Squibb Deriv. Litig.*, No. 02-CV-8571 (S.D. N.Y. 2005) ............................ 8

*Chrysler Corp. v. Dann*, 223 A.2d 384 (Del. 1966) .............................................. 4

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ........................................... 4

*In re Craftmade Int'l, Inc.*, C.A. No. 6950-VCL (Del. Ch. Nov. 10, 2011) ......................... 7

*In re Diamond Shamrock Corp.*, 1988 WL 94752 (Del. Ch.) ...................................... 5

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105 (3d Cir. 1980) .................... 9

*In re Emerson Radio S'holder Deriv. Litig.*, 2011 WL 1135006 (Del. Ch.) ............. 10, 11, 12, 13

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) .................................................. 4

*Feuer v. Thompson*, 2013 WL 2950667 (N.D. Cal. 2013) ........................................ 11

*In re Forest Labs., Inc. Deriv. Litig.*, No. 05-cv-3489 (S.D.N.Y. 2012) ........................... 8

*Franklin Balance Sheet Inv. Fund v. Crowley,* 2007 WL 2495018 (Del. Ch.) ...................... 7, 13

*In re Icagen, Inc., S'holders Litig.*, C.A. No. 6692-CS (Del. Ch. April 5, 2012) .................. 7

*In re Intel Corp. Deriv. Litig.*, No. 1:0-9-cv-867-JJF (D. Del. 2010) ............................. 8

*Jeffrey Benison IRA v. Critical Therapeutics, Inc.*, C.A. 4039–VCL
(Del. Ch. Feb. 26, 2009) ............................................................................. 7, 8, 13

*Kaufman v. Shoenberg*, 92 A.2d 295 (Del. Ch. 1952) .................................................. 10

*Korn v. New Castle Cnty.,* 922 A.2d 409 (Del. 2007) ............................................... 9, 14

*In re KSW, Inc. S'holders Litig.*, C.A. No. 7875-VCG (Del. Ch. May 9, 2013) ........................... 7

*Lambrecht v. Taurel*, 2010 WL 2985946 (S.D. Ind. June 8, 2010) ................................. 8

*Louisiana Mun. Police Emp. Ret. Sys. v. Pyott*, 46 A.3d 313 (Del. Ch. 2012)...................... 13, 14

*Louisiana Mun. Police Emp. Retirement System v. Alvarez*, 2010 WL 2735670
(Del. Ch.) .................................................................................................. 11

*In re Oclaro, Inc. Deriv. Litig.*, 2014 WL 4684993 (N.D. Cal. 2014).......................... 11

*PaineWebber R&D Partners II, L.P. v. Centocor, Inc.*, 2000 WL 130632 (Del. Ch.).................. 5

*In re Plains Res. Inc. S'holders Litig.*, 2005 WL 332811 (Del. Ch.)...................... 5, 14

*In re PMC-Sierra, Inc., Deriv. Litig.*, No. C 06-5330-RS (N.D. Cal 2008) ................................. 8

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) .............................................................. 4

*In re Rambus Inc. Deriv. Litig.*, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)........................ 8

*In re Resorts Int'l S'holders Litig.*, C.A. Nos. 9470 (Del. Ch. Oct. 11, 1990)........................ 5

*In re Sauer-Danfoss*, 65 A.3d 1116 (Del. Ch. 2011) ...................................................... 12

*In re Schering-Plough Corp. S'holders Deriv. Litig.*, 2008 WL 185809
(D.N.J. Jan. 14, 2008) .................................................................................. 8

*Seinfeld v. Coker*, 847 A.2d 330 (Del. Ch. 2000) ............................................... 5, 6, 12

*Silverberg on Behalf of Dendreon Corp. v. Gold*, C.A. No. 7646-VCP (Del. Ch. 2014)............ 11

*South v. Baker*, 62 A.3d 1 (Del. Ch. 2012) ...................................................................... 4

*In re Star Scientific Inc. Sec. Litig.*, No. 3:13-CV-00183 (E.D. Va.) ........................... 1

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) .................................................................... 4

*Stroud v. Milliken*, 1989 WL 120353 (Del. Ch.) .......................................................... 10

*Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142 (Del. 1980) .................................................. 5, 12

*In re SunPower Corp. S'holder Deriv. Litig.*, No. C 1-09-CV-159022 (Cal. Sup. Ct. 2011) ........ 8

*Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162 (Del. 1989)..................................................... 4

*In re Tyson Foods, Inc. Consol. S'holder Litig.*, C.A. No. 1106-CC (Del. Ch. 2007) ................ 11

*Unite Nat'l Ret. Fund v. Watts*, 2005 WL 2877899 (D.N.J. Oct. 27, 2005)................................... 8

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ......................................................... 4

*United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076 (Del. 1997) ................................ 5

*In re Walgreen Co. Deriv. Litig.*, No. 13 C 5471 (N.D. Ill. 2013) ................................................. 8

*Zwang v. Autoliv, Inc.*, C.A. No. 9359-VCP (Del. Ch. Oct. 6, 2014)........................................... 11

## <u>OTHER AUTHORITIES</u>

Jessica Erickson, *Corporate Goverance in the Courtroom: An Empirical Analysis*,
    51 WM. & MARY L. REV. 1749 (2010)................................................................................... 10

Kenneth B. Davis, Jr., *The Forgotten Derivative Suit,*
    61 VAND. L. REV. 387 (2008) ................................................................................................ 13

Loewenstein, Shareholder Derivative Litigation and Corporate Governance,
    24 DEL. J. CORP. L. 1 (1999) ................................................................................................... 6

## PRELIMINARY STATEMENT

The type of derivative actions that are before the Court are commonly referred to as "piggyback" derivative suits, because they are usually premised on and filed after other actions – often federal securities actions – and seek damages on behalf of the subject corporation for the legal fees and other expenses incurred in defending the underlying actions.  Perhaps not surprisingly, while the underlying actions are often resolved with a monetary payment to the class of stockholders, the piggyback derivative suits are often settled for corporate governance reforms.  And then, of course, plaintiffs' counsel in the piggyback derivative suits wish to receive a fee for creating a benefit through the corporate governance reforms.

The piggyback derivative suits here follow this familiar pattern.  They were filed after and based on the Securities Class Action[1] and sought damages based on the fees incurred in that Action and related internal and governmental investigations.  The Securities Class Action was ultimately resolved in exchange for a cash payment to the stockholder class.  Importantly, that cash payment was made entirely by Nominal Defendant Star Scientific, Inc.'s[2] ("Star Scientific" or the "Company") first three levels of insurance carriers, who also bore the bulk of the indemnifiable defense costs incurred by the Company's former directors in the Securities Class Action and related matters.  Thus, as a result of a global settlement that relieved those carriers from further obligations, the Company succeeded in minimizing its out-of-pocket expenses incurred as a result of the Securities Class Action and related matters – *i.e.*, the damages sought in these piggyback derivate actions.

---

[1]     *In re Star Scientific Inc. Sec. Litig.*, No. 3:13-CV-00183 (E.D. Va.).

[2]     On June 11, 2014, Star Scientific changed its corporate name to Rock Creek Pharmaceuticals, Inc.  For the convenience of the Court, Defendant will continue to refer to the company as Star Scientific.

Prior to the resolution of the Securities Class Action, the Company was hemorrhaging cash in defending that Action and other matters.  Moreover, if proven, the claims in the Securities Class Action could have forced the Company into bankruptcy.

A condition to the resolution of the Securities Class Action (including the competing claims and defense of the insurance carriers and the former directors seeking indemnification) was the resolution of these piggyback derivative suits.  While all of these matters were pending, the Company's stockholders elected a new board of directors, whose members (with one exception) had not previously served as directors and were not named as defendants in the Securities Class Action or these piggyback derivative actions (the "New Board").  Faced with difficult choices in attempting to resolve the much larger and more significant Securities Class Action, the New Board exercised its business judgment to settle these piggyback derivative actions in exchange for corporate governance reforms (the "Governance Reforms").

The Company does not dispute that plaintiff's counsel in the federal and state derivative actions ("Plaintiff's Counsel") are entitled to an award of reasonable fees and expenses for obtaining the Governance Reforms on behalf of the Company and its stockholders.  Dckt. No. 82, exhibit ("Ex.") A at 18.  The Company does, however, strongly disagree with Plaintiff's Counsel request for fees and expenses totaling $1,028,957.39.  This is a modest settlement warranting a modest award of fees and expenses from a company that is in dire financial straits.  Moreover, the most significant "governance reform" was the election of the New Board, which is not attributable to this litigation. For the reasons set forth below, the Court should reject this request and instead award no more than $200,000.

First, Star Scientific is in dire financial straits. Plaintiff's Counsel understood and acknowledged this fact in presenting the settlement to the Court.  Dckt. No. 93 at 3.  Indeed,

2

Plaintiff's Counsel chose not to pursue a common fund for the shareholders of Star Scientific because "there simply was not money." Dckt. No. 89 at 6. It would be sadly ironic if Plaintiff's Counsel, who purportedly brought this action to benefit the Company, instead wind up crippling it through their fee request.

Second, Plaintiff's Counsel's request for fees and expenses represents approximately 5% of Star Scientific's current market capitalization. Such an award is facially excessive and unsupported by precedent. Moreover, courts do not generally award large fees when the companies at issue qualify as "micro-cap" companies.

Third, Plaintiff's Counsel fail to carry their burden of demonstrating the reasonableness of their request for fees and expenses totaling $1,028,957.39. Plaintiff's Counsel's request is not supported by precedent, and their reliance on unfounded and illogical speculation and two pages of generalized assertions is insufficient to carry their burden. Accordingly, this Court should award no more than $200,000.[3]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendants incorporate by reference the factual background, procedural history, and terms of the Stipulation and Agreement of Compromise, Settlement, and Release ("Settlement," Dckt. No. 82, Ex. A) as executed by and between the parties.[4]  *Id.* at 2-10.

---

[3]      Not only is the Company in dire financial straits, but its carrier holding the final potentially available coverage policy has declined coverage for this action and the fee award. The Company is nevertheless hopeful that it will be able to get coverage for all or part of the amount set forth above. A higher award could be very problematic from this standpoint, however.

[4]      Defendants do not endorse the characterizations included in Plaintiff's Counsel's Statement of Facts contained in Plaintiff's Memorandum in Support of Final Settlement. Dckt. No. 106 at 3-10. The individual defendants have vigorously denied any wrongdoing in this action. Settlement, Dckt. No. 82, Ex. A at 21. Moreover, these actions make no claims against the members of the Company's New Board.

## ARGUMENT

### A.     THE LEGAL STANDARD

A litigant entering an American court bears his own attorney fees and expenses. *Arcambel v. Wiseman*, 3 U.S. 306 (1796).  One exception to the American Rule is the corporate benefit doctrine which applies when the benefit procured on behalf of the company is a therapeutic benefit, *i.e.* non-quantifiable in monetary terms.  *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989).  For a therapeutic benefit to be compensable under Delaware law,[5] the plaintiff must initially establish that the suit was meritorious when filed;[6] the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and the resulting corporate benefit was causally related to the lawsuit.  *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997); *PaineWebber R&D Partners II, L.P. v. Centocor, Inc.*, 2000 WL 130632, *2 (Del. Ch.) (citing *In re Resorts Int'l S'holders Litig.*, C.A. Nos. 9470, 9605 (consolidated) (Del. Ch. Oct. 11, 1990) (mem. op. at 4)

---

[5]     Delaware substantive law applies to the reasonableness of the fee award because Star Scientific is a Delaware Corporation, the settlement exclusively involves the internal governance of a Delaware Corporation, and the underlying claims and applicable defenses require the application of Delaware law.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  Although Plaintiff's Counsel does not cite a single Delaware case, there does not appear to be a dispute that Delaware law applies to the reasonableness of the fee award.  Dckt. No. 108 at 11 (citing *Cohn v. Nelson*, 375 F. Supp. 2d 844, 864-65 (E.D. Mo. 2005) ("Delaware courts have placed a significant value upon non-monetary benefits obtained for shareholders."); s*ee also* Settlement, Dckt. No. 82, Ex. A at 23 ("any dispute arising out of or relating in any way to this Stipulation . . . shall be governed by Delaware law").

[6]     There is a significant dispute over whether Plaintiff's suit was meritorious when filed.  Dckt. No. 93 at 9-16.  "A claim is meritorious within the meaning of the rule if it can withstand a motion to dismiss on the pleadings."  *Chrysler Corp. v. Dann*, 223 A.2d 384, 387 (Del. 1966).  In this action, the Court never reached the merits of the individual defendants' motion to dismiss (Dckt. No. 47), but the Court's Order staying the matter expressly permitted the New Board to seek dismissal.  Dckt. No. 67.  Among the disputed issues are whether the suit was dismissable when filed because Plaintiff (1) failed to make pre-suit demand and (2) failed to adequately plead demand futility.  *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993); *Stone v. Ritter*, 911 A.2d 362, 372-73 (Del. 2006); *South v. Baker*, 62 A.3d 1, 14 (Del. Ch. 2012).  The Company is not asking the Court to make a determination now as to whether the actions were meritorious when filed, or to award Plaintiff's Counsel nothing on the basis that the actions were not meritorious, but simply to note the substantial dispute on this issue in determining a reasonable fee.  *See Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) ("Changes in corporate policy . . . **if attributable to the filing of a meritorious suit,** may justify an award of counsel fees.") (emphasis added).

("An attorney fee is not a pot of nectar available to any attorney who represents any shareholder.").

Plaintiff's Counsel bears the burden of demonstrating that their request for fees and expenses is reasonable.  *In re Am. Real Estate P'rs, L.P. Litig*., 1997 WL 770718, *6 (Del. Ch.); *In re Diamond Shamrock Corp.,* 1988 WL 94752, *4 (Del. Ch.) ("plaintiffs, as proponents of the fee application, have the burden of establishing the value of the claimed benefit").  The Court determines a reasonable fee award by considering:

> (i) the amount of time and effort applied to a case by counsel for plaintiff, (ii) the relative complexities of the litigation; (iii) the standing and ability of petitioning counsel; (iv) the contingent nature of the litigation; (v) the stage at which the litigation ended; (vi) whether the plaintiff can rightly receive all the credit for the benefit conferred or only a portion thereof; and (vii) the size of the benefit conferred.

*In re Plains Res. Inc. S'holders Litig.*, 2005 WL 332811, *3 (Del. Ch.) (quoting *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980) (applying these factors in a derivative suit).  Ultimately, the award of fees and expenses is an "amount fixed in the sound discretion of the [Court]." *Chrysler Corp*, 223 A.2d at 386.

## B.   THE COMPANY'S FINANCIAL CONSTRAINTS MANDATE A LOWER FEE

Under Delaware law, the financial condition of the company is a limiting factor in determining the appropriate award of fees and expenses.  *Aaron v. Parsons*, 144 A.2d 155, 158 (Del. 1958) ("It is thus obvious that [the company] does not have liquid assets at the present time to pay a substantial sum in the way of fees and allowances."); *Seinfeld v. Coker,* 847 A.2d 330, 334 (Del. Ch. 2000) (cautioning that attorneys' fee awards should not produce a "windfall" that "serv[es] no other purpose than to siphon money away from the stockholders and into the hands of their agents").

Plaintiff's Counsel's requested award for fees and expenses would cripple the Company. The Company has disclosed – both in its SEC filings and in this litigation -- that: "We do not have enough cash and available credit lines to sustain our company for the next twelve months based on our current operating plan, and, therefore, **there is substantial doubt about our company's ability to continue to be a going concern**." Dckt. No. 93 at 3 (citing Form 10-K, filed March 12, 2014 at 40-41) (emphasis added)).

In bringing the Settlement before the Court, Plaintiff's Counsel have acknowledged the dire financial state of the Company. Dckt. No. 89 at 6 (agreeing to a corporate governance only settlement because "it became very clear that **there simply was not money** without putting this company into bankruptcy"); *id.* at 7 (acknowledging the Company "is in desperate need of funding"); Dckt. No. 93 at 4 ("Federal Co-Lead Counsel and State Lead Counsel reviewed the Company's financial situation during the settlement discussions … [and are] cognizant of the cash constraints")). Notwithstanding their awareness of the Company's financial state and reliance on it to support a non-monetary settlement, Plaintiff's Counsel now request an exorbitant and crippling award of fees and expenses in this piggyback derivative action that was purportedly brought to benefit the Company. It would be the height of irony if the Company were required to seek bankruptcy protection as a result of this fee award.[7]

---

[7]     *See* Mark J. Loewenstein, Shareholder Derivative Litigation and Corporate Governance, 24 DEL. J. CORP. L. 1, 3-4 (1999) (contending that the value "obtained by successful plaintiffs [in derivate suits] has often been insubstantial, especially when viewed in light of the fees sought by plaintiff's counsel").

C.      **THE MARKET CAPITALIZATION OF STAR SCIENTIFIC MANDATES A LOWER FEE AWARD**

In accordance with Delaware precedent, the Court should also be chary of awarding an excessive fee because Star Scientific is a nano-cap company[8] with a market capitalization of less than $24 million.[9]  *In re Icagen, Inc., S'holders Litig.*, C.A. No. 6692-CS (Del. Ch. April 5, 2012) (Tr. at 55-57) ("[T]he idea that you can ignore what's at stake as a total economic thing in sizing the fee is just wrong from an economic standpoint.");[10] *In re KSW, Inc. S'holders Litig.*, C.A. No. 7875-VCG (Del. Ch. May 9, 2013) (Tr. at 24) ("I do note this is a small company and probably can't support the type of fee that has been sought in some cases"); *Jeffrey Benison IRA v. Critical Therapeutics, Inc.*, C.A. 4039–VCL (Del. Ch. Feb. 26, 2009) (Tr. at 63) (awarding "a modest fee" of $175,000 against a company with a market capitalization of $10 million); *Franklin Balance Sheet Inv. Fund v. Crowley*, 2007 WL 2495018, *12 (Del. Ch.) ("The fee award, however, can reach a point where it no longer operates as an incentive, and rather morphs into a socially unwholesome windfall."); *In re Craftmade Int'l, Inc.*, C.A. No. 6950-VCL (Del. Ch. Nov. 10, 2011) (Tr. at 32-33) (observing that a one-size-fits-all fee award "would raise a basic question of fairness.").[11]

The authorities cited by Plaintiff's Counsel – not one of them from Delaware -- involve companies with market capitalizations that dwarf Star Scientific.  *See Unite Nat'l Ret. Fund v.*

---

[8]      A "micro-cap" company has a market capitalization from $50 million to $250 million, and a "nano-cap" company has a market capitalization of under $50 million. *See* http://www.sec.gov/investor/pubs/microcapstock.htm.

[9]      *See* http://investors.rockcreekpharmaceuticals.com/investors-stock-quote

[10]      Many Delaware rulings on fee awards are in the form of transcript rulings, and they are commonly cited in Delaware practice.  All transcript rulings cited herein are included in the compendium of transcript rulings being filed herewith as Exhibit A.

[11]      The micro-cap cases cited above involved class actions challenging mergers that were settled for disclosures only, but their logic applies equally to all class and derivative suits settled based exclusively on therapeutic benefits.

*Watts*, 2005 WL 2877899 (D.N.J. Oct. 27, 2005) (derivative suit against Shell Oil has a market capitalization over **$100 billion**); *Lambrecht v. Taurel*, 2010 WL 2985946, *2 (S.D. Ind. June 8, 2010) (market capitalization of **$90 billion**); *In re Schering-Plough Corp. S'holders Deriv. Litig.*, 2008 WL 185809, *6 (D.N.J. Jan. 14, 2008) (market capitalization of **$30 billion**); *In re Affymetrix Deriv. Litig.*, No. C 06-5353-JW (N.D. Cal. 2008) (market capitalization of **$900 million**); *In re PMC-Sierra, Inc., Deriv. Litig.*, No. C 06-5330-RS (N.D. Cal 2008) (market capitalization of more than **$1.5 billion**); *In re SunPower Corp. S'holder Deriv. Litig.*, No. C 1-09-CV-159022 (Cal. Sup. Ct. 2011) (market capitalization of greater than **$4 billion**); *In re Walgreen Co. Deriv. Litig.*, No. 13 C 5471 (N.D. Ill. 2013) (market capitalization of **$70 billion**); *In re Am. Capital S'holder Deriv. Litig.*, 2013 WL 3322294, *1 (D. Md. June 28, 2013) (awarding $710,000 in derivative suit against company with market capitalization of greater than $**3.5 billion**); *In re Forest Labs., Inc. Deriv. Litig.*, No. 05-cv-3489, slip op. (S.D.N.Y. 2012) (market capitalization of greater than **$20 billion**); *In re Intel Corp. Deriv. Litig.*, No. 1:0-9-cv-867-JJF, slip op. (D. Del. 2010) (market capitalization of nearly **$150 billion**); *In re Rambus Inc. Deriv. Litig.*, 2009 WL 166689, *2 (N.D. Cal. Jan. 20, 2009) (market capitalization of greater than **$1.5 billion**); *Bristol-Myers-Squibb Deriv. Litig.*, No. 02-CV-8571 (LAP), slip op. (S.D. N.Y. 2005) (market capitalization of nearly **$100 billion**).

Here, Plaintiff's Counsel's fee request of approximately 5% of the market capitalization of Star Scientific is facially excessive, unreasonable, and punitive.  *See Jeffrey Benison*, C.A. 4039–VCL (Del. Ch. Feb. 26, 2009) (Tr. at 63) ("The fee would amount to something approaching or maybe exceeding five percent of the total market value of the company, which seems grossly excessive.").  Accordingly, the Court should award fees and expenses of no more than $200,000.

### D.   PLAINTIFF COUNSEL'S CORPORATE GOVERNANCE REFORMS ARE MODEST

The Court accords the benefit achieved the greatest weight in determining an appropriate fee award. *Ams. Min. Corp. v. Theriault*, 51 A.3d 1213, 1254 & n. 89 (Del. 2012). Defendants do not dispute that the Governance Reforms have value, but strongly object to Plaintiff's Counsel's estimation of that value. Delaware law provides that where the claimed benefits are wholly speculative, they cannot support a fee award. *Korn v. New Castle Cnty.*, 922 A.2d 409, 413 (Del. 2007) (holding that savings from an abandoned sale of bonds were "too speculative to be considered in evaluating Korn's application for fees"). *Korn* teaches that Plaintiff's Counsel cannot claim responsibility (and therefore compensation) for preventing unknown, future misconduct that might never actualize. This is particularly the case where, as here, the most significant "governance reform" was one having nothing to do with this litigation: the election of an independent New Board.

Plaintiff's Counsel's argument is the logical fallacy of *post hoc, ergo propter hoc*.[12] They assert that the Governance Reforms are necessary "to prevent a reoccurrence of the misconduct that gave rise to the Derivative Actions."[13] Dckt. No. 108 at 2. In addition to assuming that the Company will experience similar future events, one must also assume that the Company will act similarly. Scholars have debunked the notion of corporate recidivism in the absence of governance reforms. *See* Jessica Erickson, *Corporate Goverance in the Courtroom: An Empirical Analysis*, 51 WM. & MARY L. REV. 1749, 1810-11 (2010) ("[I]t seems unlikely that

---

[12]      *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 116 (3d Cir. 1980) ("Logicians describe one process of reaching an ultimate fact from insufficient basic facts as the false cause or post hoc fallacy. The fallacy consists of reasoning from sequence to consequence, that is, assuming a causal connection between two events merely because one follows the other. For this reason the fallacy is often referred to as that of post hoc ergo propter hoc (after this and therefore in consequence of this), an expression which itself explains the nature of the error.").

[13]      *See The Crucible: A Play in Four Acts*, New York: Viking, 1953 (A man buys a pig from Martha and it dies. Martha must be a witch.).

these corporations would have repeated their past mistakes even in the absence of such an agreement [because] it is likely that the corporation will be especially cognizant of the relevant rule in the future and will take care not to violate it again. . . [therefore] the value to the corporation is not always clear.").  Here, there is absolutely no basis to assume that the New Board – elected in the wake of securities litigation and governmental investigations -- would have acted similarly.  *See In re Emerson Radio S'holder Deriv. Litig.*, 2011 WL 1135006, *6 (Del. Ch.) ("The defendants argued persuasively that their experience with the Audit Committee and this litigation sensitized them to the risks of engaging in related-party transactions with a publicly traded Delaware entity.").  This Court should reject Plaintiff's Counsel's attempt to value the Governance Reforms based purely on speculation.

Moreover, Plaintiff's Counsel have the burden of demonstrating specifically that the Governance Reforms justify their request for over a million dollar in fees and expenses.  "In litigation brought on behalf, or for the benefit, of shareholders, recovery of attorneys' fees may be had if there is a **specific and substantial benefit** to the corporation or its shareholders." *Stroud v. Milliken,* 1989 WL 120353, *3 (Del. Ch.) (emphasis added).  Plaintiff's Counsel's *ipse dixit* that "board independence" is a good thing is not enough – particularly where the independence of the New Board is the result of an election of directors, not this litigation.  *See Kaufman v. Shoenberg*, 92 A.2d 295, 295 (Del. Ch. 1952).  Therefore, the Court should reject Plaintiff's Counsel's scant two pages of generalized arguments about the benefits of the Governance Reforms and award a reasonable fee of $200,000.

Lastly, Plaintiff's Counsel's request for fees and expenses in excess of one million dollars is not supported by precedent in cases settled exclusively on the basis of corporate governance reforms, particularly for a company as small as Star Scientific.  *Louisiana Mun. Police*

*Employees' Retirement System v. Alvarez*, 2010 WL 2735670, *6-*7 (Del. Ch.) (plaintiff's counsel agreed not to seek a fee above $595,000 for obtaining corporate governance reforms for a company with a market capitalization of $40 billion, including a new ombudsman position, improved functionality of the audit committee, a new code of conduct, as well as other recommendations by plaintiff's counsel); *Zwang v. Autoliv, Inc.*, C.A. No. 9359-VCP (Del. Ch. Oct. 6, 2014) (plaintiff's counsel awarded $495,000 for corporate governance reforms of company with market capitalization of $10 billion); *see also In re Oclaro, Inc. Deriv. Litig.*, 2014 WL 4684993, at *1 (N.D. Cal. 2014) (awarding $150,000 for corporate governance reform only settlement because "the cases are essentially piggyback actions to the Oclaro securities class action."); *Feuer v. Thompson*, 2013 WL 2950667, at *3-*4 (N.D. Cal. 2013) (rejecting plaintiff's counsel request for $1.8 million in fees and expenses for corporate governance only settlement as "way out of proportion to the benefit conferred upon [the company] and its shareholders" because "the litigation here was modest and of limited duration.").

Delaware courts have only awarded fees of the magnitude requested by Plaintiff's Counsel when corporate governance reforms are combined with a cash component. *See In re Tyson Foods, Inc. Consol. S'holder Litig.*, C.A. No. 1106-CC (Del. Ch. 2007) (awarding $2.9 million to plaintiff's counsel for achieving a significant cash component and corporate governance reforms in settlement); *see also Silverberg on Behalf of Dendreon Corp. v. Gold*, C.A. No. 7646-VCP (Del. Ch. 2014) (awarding plaintiff's counsel $1.1 million for obtaining monetary and therapeutic benefits for the company). In *Emerson Radio*, 2011 WL 1135006, at *4, the Delaware Court of Chancery awarded plaintiff's counsel a fee of $750,000 for obtaining $3,000,000 for the stockholders in the derivative suit. The court awarded an additional $125,000 for the governance reforms obtained for the nano-cap company with a market capitalization of

11

around $35 million.  *Id.* at *5.  The governance reforms addressed related-party transactions, the independence of the board, the creation and formation of the audit and nomination committees, the establishment of an internal auditor, the independence of general counsel, and a new approval process for nominations for independent directors.  *Id.*  The court reasoned that "[i]deally, plaintiffs' lawyers should be seeking to enlarge the total settlement pie by extracting more tangible consideration from the defendants, not finding ways to argue for a bigger share of the existing pie."  *Id.*

The Governance Reforms bargained for by Plaintiff's Counsel are similar to those in *Emerson Radio*.  The Governance Reforms address related party transactions, the independence of the Board, the creation and formation of the Legal and Regulatory Affairs and Governance Nominating Committees, the creation of a new compliance officer position, and a new code of conduct.  Plaintiff's Counsel requests **nearly ten times** the value attributed to the governance reforms obtained in *Emerson Radio*.  The Court should decline Plaintiff's Counsel's request and award a reasonable award of $200,000 in fees and expenses.

## E.     PLAINTIFF'S COUNSEL'S  TIME AND EFFORT DO NOT JUSTIFY THEIR EXCESSIVE FEE REQUEST

"The time (i.e. hours) that counsel claim to have worked is of secondary importance."  *In re Sauer-Danfoss*, 65 A.3d 1116, 1138 (Del. Ch. 2011); *Seinfeld*, 847 A.2d, at 336 ("*Sugarland* rejected more mechanical approaches to determining fee awards, explicitly disapproving the Third Circuit's 'lodestar method.'").[14]   "[M]ore important than hours is effort, as in what plaintiffs' counsel actually did."  *Ams. Min. Corp. v. Theriault*, 51 A.3d 1213, 1258 (Del. 2012).

---

[14]     Because Delaware law applies to this action, Plaintiff's Counsel's lodestar analysis is irrelevant to their fee application.  To the extent that it remains relevant, however, Plaintiff's Counsel's efforts do not justify the fee requested for the reasons set forth below.

In these piggyback derivative suits,[15] Plaintiff's Counsel filed derivative complaints (two federal and two state derivate suits, each of which were consolidated in their respective courts). (Dckt. No. 4).  The federal derivative plaintiffs opposed Defendants' Motion to Dismiss or Stay the Action (Dckt. No. 62), attended a one-day mediation, executed a series of extensions of time to permit the exploration of settlement, and participated in successful settlement negotiations. The state derivative plaintiffs attended a one-day mediation, engaged an expert in corporate governance, and participated in successful settlement negotiations.  These efforts do not support Plaintiff's Counsel's claim that "the Derivative Actions have been extensively litigated and vigorously defended."  Dckt. No. 108 at 15.  There was no discovery in the Derivative Actions, other than in connection with the settlement.  *Jeffrey Benison*, C.A. 4039–VCL (Del. Ch. Feb. 26, 2009) (Tr. at 63) (noting, "other than filing the complaint, I guess there's nothing else that happened in court, is there?"); *see Emerson Radio*, 2011 WL 1135006, at *4 (noting plaintiff's counsel "obtained a large document production… sought and obtained third-party production, took eleven depositions, and pursued two discovery motions.").  In fact, this action settled prior to the Court's ruling on the Defendants' Motion to Dismiss.  *Franklin Balance Sheet Inv. Fund*, 2007 WL 2495018, at *13 ("This Court has a history of properly awarding lower percentages of the benefit where cases have settled well before trial.").  This case did not require significant upfront investigation and was stayed for over one year.  *See Louisiana Mun. Police Employees*' *Ret. Sys. v. Pyott*, 46 A.3d 313, 346 (Del. Ch. 2012) *rev'd sub nom. Pyott v. Louisiana Mun. Police Employees' Ret. Sys.*, 74 A.3d 612 (Del. 2013) ("Filing a derivative claim is relatively cheap.  Search costs are minimal because corporations publicly announce material adverse events. Public disclosures, news stories, and analyst reports provide the background information

---

[15]      *See* Kenneth B. Davis, Jr., *The Forgotten Derivative Suit,* 61 Vand. L. Rev. 387, 429–30 (2008) (finding empirical evidence "consistent with the critique that derivative suits simply piggyback on what the government (or perhaps even the media) already has uncovered and investigated").

for the claim."). Plaintiff's Counsel place much weight on attending mediation, however, mediation is a voluntary process intended to dispose of cases **quickly**. The Company willingly participated in mediation because it wanted to settle this action and reduce the financial burden on the Company. Lastly, and importantly, Plaintiff's Counsel's aggregation of their time for the various derivative actions is duplicative, and the mere fact that there are multiple "mouths to feed" does not justify the Plaintiff's Counsel's application for over a million dollars in fees and expenses.

> **F.  THE LITIGATION WAS ORDINARY AND ROUTINE FOR EXPERIENCED AND QUALIFIED PLAINTIFF'S COUNSEL**

This consolidated action is not particularly complex for experienced and qualified Plaintiff's Counsel. Contrary to Plaintiff's Counsel's unsupported assertion that the case was "highly complex," Plaintiff's Counsel alleged straight-forward claims that were settled prior to the Court ruling on Defendants' Motion to Dismiss. *See In re Plains Res. Inc.*, 2005 WL 332811, at *6 ("[W]hile the litigation presented several difficult factual issues, the complexity and novelty of this case were commensurate with those often encountered in corporate litigation before this court."); *Korn*, 2007 WL 2981939, at *5 ("Plaintiffs have offered only casual remarks that this issue proved complex and difficult. In support, they note that … [defendant] offered vigorous opposition. Motion practice is a normal part of litigation, however, and plaintiffs have offered no reason why the motions in this case were so complex as to justify [the requested] attorneys fee award."). Here, as in *Korn*, Plaintiff's Counsel have offered no reason why the complexity of this case warrants a million dollar award in fees and expenses. Indeed, as Plaintiff's Counsel previously acknowledged "*the overwhelming majority of settlements result solely in corporate governance changes*…." Dckt. No. 93 at 26 (emphasis in original). Moreover, there was nothing particularly complex or unique about the Governance Reforms

14

themselves.  Thus, both the litigation and terms of the settlement are standard and routine and do not support awarding Plaintiff's Counsel over a million dollars in fees and expenses.

## **CONCLUSION**

For all of the foregoing reasons, the Plaintiff's Motion for an award of $1,028,957.39 in fees and expenses should be denied.  The Court should award reasonable fees and expenses of no more than $200,000.

Date:  June 19, 2015                     Respectfully submitted,


                                         */s/ R. Scott Caulkins*
                                         R. Scott Caulkins (VSB # 23584)
                                         CAULKINS & BRUCE, PC
                                         2300 Wilson Blvd., Suite 240
                                         Arlington, VA 22201
                                         (703) 558-3664
                                         scaulkins@caulkinsbruce.com

                                         Kurt Michael Heyman, DE Bar No. 3054 (*pro hac vice*)
                                         Aaron Michael Nelson, DE Bar No. 5941
                                         Proctor Heyman Enerio LLP
                                         300 Delaware Ave., Suite 200
                                         Wilmington, DE 19801
                                         Telephone: 302-472-7300
                                         Facsimile: 302-472-7320
                                         kheyman@proctorheyman.com
                                         anelson@proctorheyman.com

                                         *Counsel for Nominal Defendant Star Scientific, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 19, 2015, I electronically filed the foregoing document with

the Clerk of Court using the CM/ECF system, which then sent a notification of such filing (NEF)

to all counsel of record.


<div align="center" style="margin-left:40%">

*/s/ R. Scott Caulkins*
R. Scott Caulkins

</div>